UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BEAZLEY USA SERVICES, INC.,

     Plaintiff,

v.                                  Case No: 6:24-mc-33-JSS-NWH

STEPHAN VIEIRA,

     Defendant,

and

DOG GOODS USA, LLC,

     An Interested Party.
_____/

## **ORDER**

Plaintiff, Beazley USA Services, Inc., moves for sanctions against Dog Goods USA, LLC. (Dkt. 18.) The magistrate judge recommends granting the motion. (Dkt. 19.) Dog Goods objects to the recommendation. (Dkt. 27.) Beazley opposes the objections. (Dkt. 30.) Upon consideration, for the reasons outlined below, the court largely overrules the objections, adopts the recommendation, grants the motion, and sanctions Dog Goods.

## **BACKGROUND**

In the Miami Division of the Southern District of Florida, Beazley is prosecuting case number 1:24-cv-22374-CMA against Defendant, Stephan Vieira, for breaches of an employment contract and for unjust enrichment. (*See* Dkt. 1 at 1–2.)

As part of the discovery for that action, Beazley issued a subpoena duces tecum under Federal Rule of Civil Procedure 45 to Dog Goods in November 2024. (*See* Dkts. 1-1, 1-2.) The subpoena required Dog Goods to email (or otherwise produce) documents related to a particular transaction and set a deadline of December 4, 2024, for doing so. (*See* Dkt. 1-1.) After Dog Goods—an Orlando, Florida company, (Dkt. 4-2)—failed to respond to the subpoena, Beazley initiated this miscellaneous case by filing a motion to compel on December 20, 2024. (Dkt. 1.) Beazley served the motion to compel on Dog Goods by delivering the motion to Dog Goods' registered agent, CSG - Capital Services Group, Inc., in January 2025. (*See* Dkt. 4; Dkt. 27-1 ¶ 6.)

Twice, in March and June 2025, the magistrate judge ordered Dog Goods to show cause why the court should not impose sanctions, (Dkts. 7, 10), but Dog Goods failed to respond to either order to show cause, (*see* Dkt. 15 at 2; Dkt. 19 at 2–3). In the June 2025 order, the magistrate judge directed Dog Goods to appear at a July 16, 2025 hearing, (Dkt. 10 at 2), but Dog Goods failed to appear, (*see* Dkt. 12; Dkt. 15 at 2; Dkt. 19 at 2). At the hearing, Beazley filed the instant motion for sanctions. (Dkt. 18.) Two weeks later, the magistrate judge granted Beazley's motion to compel and ordered Dog Goods to produce documents responsive to the subpoena by August 8, 2025. (Dkt. 15 at 2.) Dog Goods did not do so. (*See* Dkt. 19 at 3.) On August 19, 2025, the magistrate judge issued the instant recommendation. (*Id. passim.*)

Through delivery to CSG, Beazley timely served Dog Goods with the orders to show cause, the order granting the motion to compel, and the recommendation. (*See* Dkts. 8, 11, 16, 20.) Beazley engaged in additional efforts to serve Dog Goods with

the motion to compel, the orders to show cause, and the order granting the motion on August 1, 2025. (*See* Dkt. 16.) These efforts included deliveries to potential Dog Goods locations in Tobyhanna, Pennsylvania, and Windermere, Florida, and an email sent to an address from Dog Goods' website. (*See id.*) Dog Goods' managing member, Christian Bender, has declared pursuant to 28 U.S.C. § 1746[1] that his son signed for the Windermere, Florida delivery, which came to Bender's home, and that Bender "recognized . . . the[] documents [as] seeking information about actions supposedly taken by Dog Goods when [former chief executive officer Eduardo] Ratinetz was in control of the company." (Dkt. 27-1 ¶ 13.) Purportedly, Bender thus "called [Ratinetz] almost immediately after the[] papers were served," but Ratinetz did not return the call until August 16, 2025. (*Id.* ¶ 14.) Dog Goods did not appear in this case until September 2, 2025. (*See* Dkt. 21.) According to Bender, "Dog Goods is out of business and has been for over a year," Bender "derive[s] no income from" Dog Goods, and "Dog Goods' resources are virtually non-existent." (Dkt. 27-1 ¶ 17.)

The magistrate judge recommends sanctioning Dog Goods pursuant to Rule 45(g) and the court's inherent authority. (Dkt. 19 at 5.) Specifically, the magistrate judge recommends that the court find Dog Goods in civil contempt for failure to respond to the subpoena, failure to respond to the orders to show cause, and failure to comply with the order granting the motion to compel and that the court require Dog Goods to pay $18,689.80 directly to Beazley in compensation for the legal fees spent

---

[1] Although the declaration in fact cites the nonexistent provision 28 U.S.C. § 1764, (Dkt. 27-1 at 1), the court construes this citation as a clerical error.

to compel compliance with the subpoena. (*Id.* at 6–8.)  This amount derives from a declaration submitted by Beazley's counsel that identifies the legal professionals who worked on this case, states the total hours worked, hourly rate, and total fee for each professional, summarizes the overall work performed on the case, and discusses other legal costs such as filing and process server fees. (Dkt. 14-1.)  On January 8, 2026, the court ordered Beazley to file itemized billing records in support of the motion for sanctions. (Dkt. 31.)  Beazley timely submitted the billing records. (Dkt. 32.)  Dog Goods also submitted a response to the billing records. (Dkt. 38.)

Dog Goods objects that it could not comply with the orders in this case because Bender lacked actual knowledge of them until August 1, 2025, and by the time Ratinetz returned Bender's call, the August 8 deadline for producing documents had elapsed. (Dkt. 27 at 4.)  Dog Goods further challenges the amount of the sanction, arguing that the magistrate judge "failed to determine that the fees and costs were reasonably and necessarily incurred in the attempt to enforce compliance." (*Id.* at 6 (quotation omitted).)  In response, Beazley asks the court to decline to consider Dog Goods' objections because Dog Goods did not first present the arguments in the objections to the magistrate judge. (Dkt. 30 at 3–4.)  Beazley further maintains that it validly served the orders in this case on Dog Goods through CSG and that the recommended fee award is reasonable in light of the information in the declaration submitted by Beazley's counsel. (*Id.* at 4–9.)  The court deems a reduction in the amount of the fee award appropriate but otherwise agrees with Beazley.

## APPLICABLE STANDARDS

After conducting a careful and complete review of the findings and recommendations made by a magistrate judge, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations." 28 U.S.C. § 636(b)(1); *accord* Fed. R. Civ. P. 72. Generally, with respect to non-dispositive matters, the district judge "consider[s] timely objections and modif[ies] or set[s] aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1327 (11th Cir. 2020) ("[A] district court reviews a magistrate judge's ruling on non-dispositive matters under the clearly[ ]erroneous or contrary[ ]to[ ]law standard."). For dispositive matters, the district judge typically conducts a de novo review of any portion of the report and recommendation to which a timely objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *United States v. Farias-Gonzalez*, 556 F.3d 1181, 1184 n.1 (11th Cir. 2009) ("A district court makes a de novo determination of those portions of a magistrate [judge]'s report to which objections are filed."). That said, a district court is "afforded broad discretion . . . 'to decline to consider a party's argument when that argument was not first presented to the magistrate judge.'" *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1259 (11th Cir. 2022) (quoting *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009)). Even in the absence of a specific objection, the district judge generally reviews any legal conclusions de novo. *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994); *Ashworth v. Glades Cnty. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d 1244, 1246 (M.D. Fla. 2019).

Federal Rule of Civil Procedure 45(g) authorizes the "court for the district where compliance [with a subpoena] is required" to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). Regarding this rule, "it would be rare for a court to use contempt sanctions without first ordering compliance with a subpoena. Disobedience of such an order may be treated as contempt." *Golden Krust Franchising, Inc. v. Clayborne*, No. 8:20-mc-104-T-33SPF, 2020 WL 7260774, at *2, 2020 U.S. Dist. LEXIS 231774, at *6 (M.D. Fla. Dec. 10, 2020) (alteration adopted and quotation omitted). Additionally, federal courts have the inherent power to issue contempt sanctions. *See Roadway Express v. Piper*, 447 U.S. 752, 764 (1980). "A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992). Clear and convincing evidence must "demonstrate that 1) the allegedly violated order was valid and lawful[,] 2) the order was clear, definite[,] and unambiguous[,] and 3) the alleged violator had the ability to comply with the order." *Jordan v. Wilson*, 851 F.2d 1290, 1292 n.2 (11th Cir. 1988).

"Once a prima facie showing of a violation has been made, the burden of production shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply." *Commodity Futures*, 950 F.2d at 1529. "In satisfying this burden," the alleged contemnor must "offer proof beyond a mere assertion of inability and introduce evidence supporting his claim." *Citronelle-Mobile Gathering, Inc.*

- 6 -

*v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991) (quotation omitted).  "[A] party subject to a court's order demonstrates inability to comply only by showing that he has made[,] in good faith[,] all reasonable efforts to comply."  *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988) (quotation omitted).  "The proper focus of the [civil contempt] inquiry . . . is not the subjective belief or intent of the alleged contemnor, but whether the order was in fact violated.  Ambiguities should be resolved in favor of the party charged with contempt."  *United States v. Barnette*, 902 F. Supp. 1522, 1532 (M.D. Fla. 1995) (citations omitted).

"Once a district court finds a party in contempt, it has 'broad discretion in fashioning a contempt sanction.'"  *Nat'l Union Fire Ins. Co. v. Olympia Holding Corp.*, 140 F. App'x 860, 864 (11th Cir. 2005) (quoting *Sizzler Family Steak Houses v. W. Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1536 n.8 (11th Cir. 1986)).  "The court has the power to impose coercive and compensatory sanctions."  *Citronelle-Mobile*, 943 F.2d at 1304. A "[c]ompensatory civil contempt [sanction] reimburses the injured party for the losses and expenses incurred because of [the adverse party]'s noncompliance," such as "losses flowing from noncompliance and expenses reasonably and necessarily incurred in the attempt to enforce compliance."  *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976).

## ANALYSIS

Primarily, the court overrules Dog Goods' objections in large part by exercising its broad discretion to decline to consider them because Dog Goods did not present

the arguments therein to the magistrate judge even though Dog Goods could have done so before the recommendation issued. *See Club Madonna*, 42 F.4th at 1259. Federal Rule of Civil Procedure 5(b)(2)(F) states that in general, service of a paper on an entity "is complete when the person making service"—here, Beazley—"delivers [the paper] to the agency designated" to deliver the paper to the entity. Fed. R. Civ. P. 5(b)(2)(F). Dog Goods designated CSG as its agent for service, and Beazley served the motion to compel on Dog Goods by delivering it to CSG in January 2025. (*See* Dkt. 4.) In the same way, Beazley timely served Dog Goods with the orders to show cause and the order granting the motion to compel. (*See* Dkts. 8, 11, 16.) Accordingly, Dog Goods had months to appear in this case before the recommendation issued on August 19, 2025, (*see* Dkt. 19), but it chose not to appear until fourteen days afterward, (*see* Dkt. 21). Further, by his own admission, Bender had actual knowledge of the orders at issue by August 1, 2025—over two weeks before the recommendation appeared on the docket—and had conferred with Ratinetz by August 16, 2025—giving Dog Goods, at a minimum, days to submit a filing for the magistrate judge's consideration. (*See* Dkt. 27-1 ¶¶ 13–14.) Instead, Dog Goods submitted nothing for the magistrate judge's consideration, not even a motion for extension of time to produce the subpoenaed documents.

Dog Goods "flat-out failed to make" any argument before the magistrate judge, including the arguments that Dog Goods now "attempt[s] to raise for the first time before the district court." *See Gargett v. Fla. Dep't of Juv. Just.*, No. 21-13430, 2023 WL 8706076, at *6, 2023 U.S. App. LEXIS 33347, at *15–16 (11th Cir. Dec. 18, 2023).

- 8 -

"[A] district judge need not consider an argument that a party failed to present to the magistrate judge."  *United States v. Coulton*, 594 F. App'x 563, 568 (11th Cir. 2014). Accordingly, the court largely declines to consider Dog Goods' objections and overrules them on that basis.  *See Worley v. City of Lilburn*, 408 F. App'x 248, 253 (11th Cir. 2011) (perceiving no abuse of discretion when the district court "refus[ed] to consider evidence and arguments . . . advanced for the first time in . . . objections" because the objecting party put forward "no reason why he could not have discovered or presented his argument . . . to the magistrate judge"); *J.P.F.D. Inv. Corp. v. United Specialty Ins. Co.*, 322 F. Supp. 3d 1263, 1267 (M.D. Fla. 2018) ("The [c]ourt does not reach [the] . . . argument . . . because it was not presented to the [m]agistrate [j]udge.").

Alternatively, the court considers Dog Goods' objections and overrules them in large part on the merits.  By clear and convincing evidence, Beazley has made prima facie showings that the subpoena and orders at issue were not only valid and lawful but also clear, definite, and unambiguous and that Dog Goods had the ability to comply with the subpoena and orders but did not do so.  *See Wilson*, 851 F.2d at 1292 n.2.  The recommendation explains:

> [Beazley] has shown by clear and convincing evidence that [Dog Goods] failed to comply with the [s]ubpoena and violated several of this [c]ourt's clear and unambiguous orders.  This is not a case where compliance was complex.  [Dog Goods] needed only to respond, in some form, to the [s]ubpoena or any of the [c]ourt's three [o]rders directing compliance.  It did nothing.

(Dkt. 19 at 5.)  In its objections to the recommendation, Dog Goods asserts its inability

to comply, citing only Bender's declaration (Dkt. 27-1) for factual support. (Dkt. 27 at 4.) As this declaration makes clear, soon after Bender received the papers on August 1, 2025, he called Ratinetz, but then he waited two weeks for Ratinetz to call him back before he took any further action. (*See* Dkt. 27-1 ¶¶ 13–14.) Even considering that Dog Goods had stopped doing business over a year before, the court cannot conclude from this course of conduct that the company "made[,] in good faith[,] all reasonable efforts to comply" with the order requiring document production by August 8, 2025. *See Roberts*, 858 F.2d at 701; *see also Chairs v. Burgess*, 143 F.3d 1432, 1438 n.11 (11th Cir. 1998) (noting that "a party [does] not act . . . with all reasonable efforts if he d[oes] little or nothing to comply with" a court order).

As to the subpoena and orders to show cause, Dog Goods seems to fault CSG for failing to notify Bender of the documents until September 16, 2025, and Bender reports that CSG refused when asked to provide him with a written explanation respecting this failure to notify. (*See* Dkt. 27 at 4; Dkt. 27-1 ¶¶ 6–12.) However, neither Dog Goods nor Bender offers information about Dog Goods' procedures for ensuring that it timely receives all documents delivered to its registered agent. (*See* Dkts. 27, 27-1.) Consequently, the court cannot conclude that Dog Goods "made[,] in good faith[,] all reasonable efforts to comply" with the subpoena and orders to show cause. *See Roberts*, 858 F.2d at 701; *cf. Hensel Phelps Constr. Co. v. Drywall Sys. Inc. of S. Fla.*, No. 06-21755-CIV-COOKE/BROWN, 2007 WL 2433839, at *2–3, 2007 U.S. Dist. LEXIS 61609, at *7, *10 (S.D. Fla. Aug. 22, 2007) (denying a defendant's motion to vacate a default judgment when the defendant argued that a delay caused by its

registered agent amounted to excusable neglect, and reasoning that the defendant "did not present an affidavit or declaration from its registered agent regarding how the alleged delay . . . occurred," the defendant "failed to establish sufficient minimum procedural measures to ensure that the process was properly forwarded and/or identified," and the defendant "did not present any evidence to establish that it had any minimum procedural safeguards in place or that any procedural safeguards were violated by its registered agent"); *cf. also Celeritech Int'l Corp. v. Superstar Holdings Inc.*, 348 F.R.D. 127, 137 (S.D. Fla. 2024) ("[The defendant] merely states that it never received any notice from its registered agent regarding this lawsuit.  This is problematic, as the [c]ourt has found, [the p]laintiff properly served [the d]efendant in this case, and [the d]efendant has not provided the [c]ourt with a declaration or affidavit from its registered agent to support the contention that the [c]omplaint and [s]ummons were never forwarded to any individual from [the d]efendant's company. The [c]ourt finds this gap in facts to be fatal.  In the face of a facially valid return of service, and without any explanation having been provided for a lapse in actual notice to [the d]efendant, the [c]ourt declines to rely upon [the d]efendant's counsel arguments, combined with the self-serving affidavits of [the d]efendant's employees to vacate the default judgment in this matter." (emphasis omitted)).  The court therefore holds Dog Goods in civil contempt.

Dog Goods challenges the amount of the contempt sanction as unreasonable. (Dkt. 27 at 4–6.)  The court is itself an expert on the reasonableness of legal fees and may award fees based on its own experience.  *See Norman v. Hous. Auth. of Montgomery*,

- 11 -

836 F.2d 1292, 1303 (11th Cir. 1988). Beazley has "reasonably and necessarily incurred" legal expenses to obtain subpoenaed documents from Dog Goods. *See Norman Bridge*, 529 F.2d at 827; *see also Abbott Lab'ys v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000). Beazley can recover $726.30 in costs consisting of the $58.00 filing fee for this case, $220.00 in process server fees, and $454.30 in travel and accommodation expenses incurred in connection with the July 16, 2025 hearing. (*See* Dkt. 32-1 ¶ 5; *see also* Dkt. 38 ¶ 9 ("Dog Goods does not dispute the costs incurred by [Beazley].").) However, the rates and hours in the records provided by Beazley do not reflect reasonable expenses for attorney and paralegal work. (*See* Dkt. 32-1 ¶ 4; Dkt. 32-3.)

Beazley asserts that Mark Romance (a partner admitted to the Florida Bar in 1994) is entitled to a rate of $850.00 for 8.8 hours of work, that Nicholas Lombard (a senior associate admitted to the Florida Bar in 2023) is entitled to a rate of $565.00 for 7.7 hours of work, that Brendan Donahue (an associate apparently not admitted to the Florida Bar but admitted to the Massachusetts Bar in 2021) is entitled to a rate of $430.00 for 0.7 hours of work, that Alfredo Dally (an associate admitted to the Florida Bar in 2022) is entitled to a rate of $430.00 for 11.4 hours of work, and that Evelyn Davila (an experienced paralegal in Florida) is entitled to a rate of $300.00 for 3.1 hours of work. (Dkt. 32-1 ¶ 4.) To calculate the value of legal services, courts in the Eleventh Circuit use the lodestar method, under which the court first determines the reasonable rate of the legal professional's services and then determines if the hours expended by the professional are reasonable. *See Norman*, 836 F.2d at 1299–1302. "A

reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by [legal professionals] of reasonably comparable skills, experience, and reputation." *Id.* at 1299. "The general rule is that the relevant market for purposes of determining the reasonable hourly rate for [a legal professional]'s services is the place where the case is filed," *Am. C.L. Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quotation omitted), and this case was filed in Central Florida, (*see* Dkt. 1). The moving party "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," and "[s]atisfactory evidence at a minimum is more than the affidavit of the [legal professional] performing the work." *Norman*, 836 F.2d at 1299. The court's goal respecting fee calculation is "to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

In this case, each hourly rate claimed exceeds the prevailing market rate in the relevant legal community. Reasonable rates for Mr. Romance and Mr. Lombard are $500.00, not $850.00, and $325.00, not $565.00. *See Duraserv LLC v. Action Garage Door Repair Corp.*, No. 2:24-cv-996-KCD-DNF, 2025 WL 2652858, at *2, 2025 U.S. Dist. LEXIS 180795, at *5 (M.D. Fla. Sept. 16, 2025) ("find[ing] an appropriate hourly rate for partner-level work to be $500[.00] and $325[.00] for associate-level work"); *accord Elite Produce, Corp. v. Noel Farms Produce, LLC*, No. 24-cv-22598-ALTMAN, 2025 U.S. Dist. LEXIS 44843, at *12–13 (S.D. Fla. Mar. 12, 2025) (deeming $500.00 a reasonable rate for a partner with years of practice experience); *Garcia v. Pajeoly Corp.*, No. 18-23399-Civ-SCOLA/TORRES, 2020 WL 764127, at *4, 2020 U.S. Dist. LEXIS 5429, at *11 (S.D. Fla. Jan. 10, 2020) (recommending a rate of $325.00 for a

senior associate), *report and recommendation adopted by* 2020 WL 764035, at *1, 2020 U.S. Dist. LEXIS 28421, at *1–2 (S.D. Fla. Jan. 31, 2020).  A reasonable rate for Mr. Donahue and Mr. Dally is $250.00, not $430.00.  *See Esprit Stones Private Ltd. v. Rio Stone Grp. Inc.*, No. 6:19-cv-637-CEM-LHP, 2023 WL 11905724, at *2, 2023 U.S. Dist. LEXIS 173076, at *5–6 (M.D. Fla. Sept. 27, 2023) (determining that $250.00 was a reasonable hourly rate for associates who had been barred for three to seven years); *JSurgical, Inc. v. Synergy Health, PLC*, No. 8:18-cv-1022-T-30JSS, 2018 WL 7502044, at *3, 2018 U.S. Dist. LEXIS 222957, at *9 (M.D. Fla. Dec. 6, 2018) (deeming a rate of $250.00 reasonable for an associate with four years of experience); *accord Mitsubishi HC Cap. Am., Inc. v. Aerospace Asset Trading, LLC*, No. 22-20074-CIV-DAMIAN/Sanchez, 2025 WL 1433769, at *4, 2025 U.S. Dist. LEXIS 47973, at *10 (S.D. Fla. Mar. 17, 2025) ("Hourly rates between $195.00[ and ]$295.00 have been awarded for associates with four or fewer years of experience." (citing *JSurgical* with approval)).

Further, the court halves the rate for Ms. Davila from $300.00 to $150.00 to bring the rate in line with the rates of paralegals with similar experience.  *See Universal Physician Servs., LLC v. Del Zotto*, No. 8:16-cv-1274-T-36JSS, 2017 WL 2560024, at *2–3, 2017 U.S. Dist. LEXIS 90578, at *8–9 (M.D. Fla. May 24, 2017) (recognizing a "spectrum of $125[.00] to $150[.00] per hour charged for the work of paralegals with similar experience" to an individual "who ha[d] been licensed as a paralegal in Florida since 1995"), *report and recommendation adopted by* 2017 WL 2538190, at *1, 2017 U.S. Dist. LEXIS 89666, at *2 (M.D. Fla. June 12, 2017); *Griffith v. Landry's, Inc.*, No. 8:14-

- 14 -

cv-3213-T-35JSS, 2016 WL 11578768, at *4, 2016 U.S. Dist. LEXIS 196041, at *13–14 (M.D. Fla. Aug. 17, 2016) (collecting cases indicating a prevailing market rate for paralegals between $75.00 and $150.00); *accord Gulf Bldg. LLC v. Phila. Indem. Ins. Co.*, No. 22-CV-60573-RUIZ/STRAUSS, 2024 WL 309026, at *7, 2024 U.S. Dist. LEXIS 3706, at *17 (S.D. Fla. Jan. 8, 2024) ("[A] reasonable rate for [paralegals] in [the Southern] District [of Florida] is $125.00." (collecting cases)), *report and recommendation adopted by* 2024 WL 307623, at *1, 2024 U.S. Dist. LEXIS 14128, at *3 (S.D. Fla. Jan. 26, 2024).

With respect to the hours requested, the court notes that "lawyers should not . . . bill their clients for . . . work that a non-lawyer," such as a paralegal, "could just as well do." *Trump v. Clinton*, 653 F. Supp. 3d 1198, 1232 (S.D. Fla. 2023). However, the billing records (Dkt. 32-3) indicate that some of the tasks performed by Mr. Romance, Mr. Lombard, and Mr. Dally, for example the preparation of notices, encompass paralegal work, which is compensable at the reduced rate for Ms. Davila. *See Kennedy v. KSK Invs. LLC*, No. 6:17-cv-640-Orl-37KRS, 2017 WL 6403072, at *3, 2017 U.S. Dist. LEXIS 210340, at *8 (M.D. Fla. Nov. 24, 2017) (recommending that the time spent by an attorney "preparing a summons and cover sheet, directions to a process server[,] and . . . form notices of related cases and a certificate of interested persons . . . be compensated at the paralegal rate"), *report and recommendation adopted by* 2017 WL 6387974, at *1, 2017 U.S. Dist. LEXIS 205414, at *2 (M.D. Fla. Dec. 14, 2017); *see also Schwarz v. Seeman Holtz Prop. & Cas., LLC*, No. 21-cv-81005, 2023 WL 2087934, at *5 n.2, *7, 2023 U.S. Dist. LEXIS 28312, at *14 n.2, *21–22 (S.D. Fla.

Feb. 2, 2023) (recommending that 1.2 hours that a partner with decades of experience spent on work that "could have been assigned to a paralegal" be "billed at the paralegal rate"), *report and recommendation adopted by* 2023 WL 2071844, at *1, 2023 U.S. Dist. LEXIS 27497, at *1 (S.D. Fla. Feb. 17, 2023). After reviewing the billing records, the court concludes that the following hour-and-rate combinations are reasonable: 7.6 hours for Mr. Romance at a rate of $500.00 and 1.2 hours for him at the paralegal rate of $150.00, 7.6 hours for Mr. Lombard at a rate of $325.00 and 0.1 hours for him at the paralegal rate of $150.00, 0.7 hours for Mr. Donahue at a rate of $250.00, 7.4 hours for Mr. Dally at a rate of $250.00 and 4.0 hours for him at the paralegal rate of $150.00, and 3.1 hours for Ms. Davila at a rate of $150.00. When the court multiplies the hours by the corresponding rates and then adds the products, the total is $9,555.00 in reasonable attorney and paralegal fees.

In light of the above, based on its own expertise, the court determines that $10,281.30 ($726.30 in costs plus $9,555.00 in fees) is a reasonable sanction for Dog Goods' actions. *See McGregor v. Chierico*, 206 F.3d 1378, 1385 n.5 (11th Cir. 2000) ("District courts are afforded wide discretion in fashioning an equitable remedy for civil contempt.").

## CONCLUSION

Accordingly:

1. Dog Goods' objections (Dkt. 27) are **OVERRULED in part**.

2. The magistrate judge's recommendation (Dkt. 19) is **ADOPTED in part**.

3. Beazley's motion for sanctions (Dkt. 18) is **GRANTED in part**.

4. Dog Goods is **HELD IN CIVIL CONTEMPT** for its failure to comply with the subpoena, the two orders to show cause, and the order granting the motion to compel and is **SANCTIONED** such that Dog Goods shall pay $10,281.30 directly to Beazley on or before March 20, 2026. By the same date, Dog Goods shall file with the court a notice indicating that payment was made as required.

**ORDERED** in Orlando, Florida, on March 5, 2026.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

- 17 -